UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

J<small>OEL</small> I<small>RWING</small> W<small>ILSON</small>,

            Petitioner,           Case No. 2:18-cv-79

v.                                     Honorable Gordon J. Quist

K<small>ATHLEEN</small> O<small>LSON</small>,

            Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Joel Irwing Wilson is incarcerated with the Michigan Department of Corrections at the Central Michigan Correctional Facility (STF) in Gratiot County, Michigan. On January 28, 2016, following a two-day bench trial in the Saginaw County Circuit Court, Petitioner was convicted of larceny by conversion of an amount of more than $1,000.00 but less than $20,000.00, in violation of Mich. Comp. Laws § 750.362; the fraudulent sale of securities, in violation of Mich. Comp. Laws §§ 451.2501; and a general securities act violation, in violation of Mich. Comp. Laws § 451.2508. On February 23, 2016, the court sentenced Petitioner to concurrent prison terms of 80 to 120 months for the fraudulent sale of securities and the securities act violation, and 30 to 60 months for larceny.[1]

---

[1] Petitioner was credited for 763 days he had already served at the time of sentencing. (Sentencing Tr., ECF No. 6-10, PageID.247.) Between that credit and the time he has since served, he has completed his sentence for larceny and has been discharged. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=956885 (visited May 11, 2020).

On June 7, 2018, Petitioner, with the assistance of counsel, filed his habeas corpus petition, raising two grounds for relief, as follows:

I. Mr. Wilson was denied due process of law and his convictions and sentence must be reversed where he was extradited and tried in violation of the United States' international treaties with Germany.

II. Mr. Wilson was denied due process of law where his sentence was unreasonable.

(Pet., ECF No. 1, PageID.5.) Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit. Accordingly, I recommend that the petition be denied.

## Discussion

**I.    Factual allegations**

Petitioner was prosecuted in Saginaw County for violation of the state securities laws in connection with his sale of limited partnership interests. The Saginaw County Circuit Court case was not Petitioner's first prosecution for selling such partnership interests. On March 5, 2015, following a seven-day jury trial in the Bay County Circuit Court, Petitioner was convicted of racketeering, in violation of Mich. Comp. Laws § 750.159i(3); larceny by conversion of an amount of $20,000.00 or more, in violation of Mich. Comp. Laws § 750.362; two counts of fraudulent sales of securities, in violation of Mich. Comp. Laws §§ 451.2501, 451.2508; and two counts of general securities act violations, in violation of Mich. Comp. Laws § 451.2508. On April 24, 2015, the Bay County Circuit Court sentenced Petitioner to concurrent prison terms of 105 to 240 months on the racketeering conviction and 80 to 120 months for each of the other convictions.

While Petitioner was appealing his conviction and sentences in the Bay County case, he was tried in Saginaw County. The Michigan Court of Appeals issued its opinion regarding the Bay County convictions and sentences first. When the appellate court decided Petitioner's appeal in the Saginaw County case, it simply quoted its statement of facts from the Bay County appeal:

> Defendant's convictions arise from his involvement in an elaborate real estate scheme involving the purchase of distressed property to be renovated and sold at a profit. In 2009 defendant and his partner, Michael Kazee, started Diversified Group Management Partnership, LLC (Diversified) and American Realty Funds Corporation (American). Diversified, in turn, created 17 limited partnerships, each with a limited number of investors. Kazee left the company in May 2012. The prosecution alleged that defendant structured the various entities in a manner designed to evade compliance with federal and state securities laws and regulations, and to deceive individuals into investing in unprofitable companies, thereby allowing defendant to use the investment funds for his family's personal gain, rather than for the purposes for which the funds were invested. Over the course of this enterprise from 2009 to 2012, approximately 125 investors invested approximately $7 million. The investors lost approximately $6.4 million. The prosecutor maintained that, during this time period, defendant converted approximately $583,000 in Diversified assets.

(Mich. Ct. App. Op., ECF No. 6-11, PageID.254-255). The court of appeals noted the following additional facts unique to the Saginaw County case:

> In the case now before us, the securities convictions concerned the selling of "limited partnership" shares in Diversified to one investor, Vicki Tedrow. The larceny by conversion conviction stemmed from defendant purchasing a vehicle for his wife with investor funds.

(*Id.*, PageID.255.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). Petitioner's habeas challenges do not call into question the facts recited by the state appellate court.

The Saginaw County Circuit Court judge heard testimony from most of the witnesses who testified in the Bay County prosecution. He reached the same conclusion that the

3

Bay County jurors reached—Petitioner had violated the securities laws and committed larceny. The Saginaw County Circuit Court judge, Judge Janet M. Boes, also reached the same conclusion that the Bay County Circuit Court judge reached with regard to Petitioner's sentences: the guidelines did not adequately account for the extent of Petitioner's fraudulent scheme or the damage he caused. Accordingly, Judge Boes departed from the sentencing guidelines when she imposed sentences of 80 to 120 months on the securities violations.

Petitioner, with the assistance of counsel, appealed his convictions and sentences raising three issues, including the two issues he raises in his habeas petition. By unpublished opinion issued July 25, 2017, the Michigan Court of Appeals rejected Petitioner's challenges, with one exception. The appellate court agreed with Petitioner that the trial court had misscored the sentencing guidelines. The court of appeals ordered a remand to permit the trial court to correct the guidelines score, but the court acknowledged that the correction would not warrant resentencing because the trial court had departed upward from the guidelines range anyway. (Mich. Ct. App. Op., ECF No. 6-11, PageID.258.)

Petitioner, again with the assistance of counsel, sought leave to appeal the court of appeals' decision in the Michigan Supreme Court. Petitioner raised several issues, including the two issues raised in his habeas petition. On November 29, 2017, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 6-14, PageID.546.) Thereafter, Petitioner timely filed his petition in this Court.[2]

---

[2] At the same time Petitioner filed the petition challenging his Saginaw County convictions and sentences he filed another petition challenging the Bay County conviction and sentences. *Wilson v. Olson*, No. 2:18-cv-78 (W.D. Mich.). Although the undersigned has drafted a separate report and recommendation in both of Petitioner's cases, he has considered them together because both cases include a challenge based on the "rule of specialty."

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if

5

it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Violation of Petitioner's due process rights at sentencing

In the petition, Petitioner challenges the fairness of his sentence because it was impacted by the judge's conclusion that the scheme had impacted people other than the person who was victimized by the particular conduct in Bay County for which Petitioner was prosecuted. At the sentencing hearing, Judge Boes stated:

> In determining the sentence to be imposed, in this matter, the Court has considered the Presentence Report Information, including the sentence guidelines—which are now advisory—as well as the nature and circumstances of the offenses, in this case.

> In particular, what the guidelines are; but more importantly, the impact upon the victims, the exploitation of trust by the defendant—which is, to some extent, addressed in the sentence guidelines, but I don't think adequately, and to the degree and enormity of the—for want of a better word, pain and suffering that the defendant has caused—the amounts involved, and the extent of the scheme that the defendant was involved in, and the people that have been seriously impacted, changing their lives.
>
> These—these are people who are not in a position to make up this loss in another way, at this point in their lives. And they certainly were trusting of the defendant, to assist them, to protect the money that they were investing. And he did just the opposite.

(Sentencing Hr'g Tr., ECF No. 6-10, PageID.247.)

In the securities violation counts, counts 1 and 2, Petitioner was only charged with conduct relating to victim Vicki Tedrow. Petitioner argues:

> If the trial court was referencing conduct for which Mr. Wilson had already been convicted and sentenced in the Bay County case, then imposing punishment based upon that conduct clearly violated Mr. Wilson's due process rights. Mr. Wilson had previously been punished for the conduct arising from the Bay County case, and it would have been improper to enhance his sentence in this case based upon that prior conduct. If the multiple victims that the court mentioned was referring to "the investors of the Diversified Group" who were collectively listed as the complaining witness in Count 3 (Larceny by Conversion), then the basis for the court's upward departure and sentence would have only been applicable to that count, as opposed to Counts 1 and 2.

(Pet'r's Br., ECF No. 1, PageID.28.) Essentially, Petitioner contends that if the court considered any conduct other than the conduct which comprised the specific conviction for which sentence was being imposed, the sentence was unfair and violated due process.

The argument Petitioner presents in his petition is very different from the argument as he presented it to the Michigan appellate courts. (Pet'r's Appeal Br., ECF No. 6-11, PageID.299-308; Pet'r's Appl. for Leave to Appeal, ECF No. 6-14, PageID.567-573.)[3] The court of appeals addressed Petitioner's arguments as follows:

---

[3] Indeed, Petitioner's argument in the Michigan Supreme Court was entirely different from the argument he presented in the court of appeals.

"[T]he principle of proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). "In making this assessment, the judge . . . must take into account the nature of the offense and the background of the offender." *Id*. at 651. "'[D]epartures [from the guidelines] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing.'" *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 657 (second alteration by *Steanhouse*). "'[T]rial judges may . . . depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime.'" *Id*., quoting *Milbourn*, 435 Mich at 657. "'Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality.'" *Id*.at 46, quoting *Milbourn*, 435 Mich at 659-660. Factors a sentencing court may consider include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation[.] [*Id*.(citations omitted).]

Defendant suggests that the fact that his business was actually operating is a mitigating factor that should have been considered. "This was not a case where Mr. Wilson was moving money to some out-of-country account or living in a mansion at investor's expense," he argues. But, Ann Tushaus, an accountant for the United States Securities and Exchange Commission, testified that approximately $582,000 of investor money was used to pay for "expenses benefitting [defendant] and the Diversified Group co-owner," including "payments directly to [defendant] of about 99,000," "payments to [defendant's] wife's entities," and "the purchase of Wilson's residence on Atlanta."

In any event, defendant's convictions were not based on how he ran the underlying business. His convictions are based on the misleading statements and omissions he made while selling unregistered securities. See *Milbourn*, 435 Mich at 651 (directing that a sentencing court "must take into account the nature of the offense"). There was testimony that American "never reported a profit" and "always operated a net loss." Yet defendant sold limited partnerships to Tedrow in February 2012 without mentioning American's struggles. And, although Tedrow did not receive a verbal guarantee from defendant on a rate of return for her investment, she was apparently under the belief she would receive rate of return consistent with that advertised by Diversified. The trial court found that a Diversified promotional video "refers to annual return to investors of 10 cents on the dollar." An accountant for the United States Securities and Exchange Commission testified that statements provided to Diversified investors "showed investor returns of approximately 10.44 annualized returns for all of the LP

investors," but that the statements did not "match the reality of what was taking place truly with Diversified funds?" In all, defendant raised "about 6.1 million" through the limited partnerships. It appears that at least some of defendant's investors were elderly persons who essentially lost their life savings.

Defendant asserts that the factors relied on by the trial court in imposing sentence were already accounted for by the guidelines, but he fails to present any argument in support, thereby abandoning the claim on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant . . . to assert an error and then leave it up to this Court to discover and rationalize the basis for his claims . . . .")

In any event, as the trial court reasoned, the guidelines do not reflect the devastating effect that defendant's actions had on the complainant. "The Legislature adopted the guidelines to promote uniform sentencing across the state." *People v Smith*, 482 Mich 292, 312; 754 NW2d 284 (2008). Consistent with the goal of uniformity is the principle of proportionality. Cf. *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003) (noting that in enacting the statutory guidelines, "[t]he Legislature has subscribed to this principle of proportionality in establishing the statutory sentencing guidelines"). Uniformity means that the guidelines are designed to apply to the average defendant under certain enumerated circumstances (prior record variables) and the severity of the crime committed under certain enumerated circumstances (offense variables).

The court here correctly concluded that the guidelines did not adequately account for the circumstances of this particular defendant and this particular crime. Tedrow indicated that she lost all of the roughly $250,000 in retirement funds she invested with defendant. Defendant was assessed 10 points under OV 16 for damage to property of more than $20,000. MCL 777.46(1)(b). A loss of $250,000 exceeds the floor set forth in § 6(1)(b) by such a degree of magnitude that the score of 10 points fails to account for the impact the crime had on Tedrow and the extent of the financial injury. Considering the circumstances of this defendant and this sentencing offense, *Steanhouse*, 313 Mich App at 46, the trial court's departure sentence is within the range of principled outcomes.

(Mich. Ct. App. Op., ECF No. 6-11, PageID.259-260) (footnotes omitted).

The appellate court's analysis is focused exclusively on state law, not because the court ignored Petitioner's federal constitutional argument, but because Petitioner did not really raise such an argument.[4] Before the Court may grant habeas relief, the prisoner must exhaust

---

[4] In his court of appeals brief, Petitioner does reference the federal concept of "reasonableness." (Pet'r's Appeal Br., ECF No. 6-11, PageID.299-302.) That argument, however, was an attempt to give meaning to the state law concept of a reasonable departure sentence, as required under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), by reference to the requirement of reasonableness under the federal sentencing guidelines based on the factors set forth in 18 U.S.C.

9

remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  He cannot because he simply did not raise a federal constitutional challenge to his sentence in the state appellate courts.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  Petitioner has at least one available procedure by which to raise the issue he has presented for the first time in this application.  He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.*

Under Michigan law, one such motion may be filed after August 1, 1995.  Mich. Ct. R. 6.502(G)(1).  Petitioner has not yet filed his one allotted motion.  Therefore, the Court

---

§ 3553(a), not a constitutional argument.  Moreover, Petitioner entirely abandoned that argument in the Michigan Supreme Court.

10

concludes that he has at least one available state remedy. To properly exhaust his claim, Petitioner would have to file a motion for relief from judgment in the Saginaw County Circuit Court. If his motion were denied by the circuit court, Petitioner would have to appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court. *O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'") (citation omitted).

Although the Court may not grant relief on a habeas claim that is unexhausted, the Court may deny relief on such a claim. 28 U.S.C. 2254(b)(2). Petitioner's unexhausted claim is so lacking in merit that dismissal, even absent exhaustion, is appropriate.

By the time Petitioner presented his position to the Michigan Supreme Court, the argument had been whittled down to a straightforward claim that his sentences were disproportionate to his crimes. Although there might be an argument that a sentence could be so disproportionate that it would violate the Eighth Amendment prohibition of cruel and unusual punishment, that is not the proportionality argument Petitioner presented in the state courts. In his briefs before the Michigan appellate courts, Petitioner claimed that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990). Under *Milbourn*, the sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal,

principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).

A federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. 28 U.S.C. § 2254(a); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, any claim based on *Milbourn* is not cognizable in a habeas corpus action.

Even if Petitioner were to present an Eighth Amendment proportionality claim, it would fail. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).

A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

Petitioner's sentence, therefore, does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

As presented in this Court, however, Petitioner's claim is not strictly that his sentence is disproportionate; rather, he claims that his sentence is disproportionate because the trial court considered facts it should not have considered when imposing sentence. Certainly, due process places some limits on the information a trial court can rely on when imposing sentence. It is well established that a court violates due process when it imposes a sentence based upon materially false information. *United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447.

But that is not the claim Petitioner is raising. He does not complain that the information the trial court relied on was false, he complains that it was information that did not comprise the offense for which he was sentenced. There is no such constitutional limitation. "[I]t is settled law that a trial judge in performing his [or her] sentencing function may appropriately consider any responsible information of a relevant nature, even though unsworn or derived from an out-of-court source," . . . including evidence of criminal charges for which the defendant may never have been tried. *Collins v. Buchkoe* , 493 F.2d 343, 345 (6th Cir. 1974) (citing *Williams v. Oklahoma*, 358 U.S. 576 (1959)).

The United States Supreme Court has never held that due process is offended by a sentencing court's consideration of evidence of conduct other than the specific conduct that comprises the offense for which the defendant is being sentenced. Accordingly, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his sentencing challenge is contrary

to, or an unreasonable application of, clearly established federal law. Petitioner is, therefore, not entitled to habeas relief on the challenge to his sentences.

## IV.    Extradition and due process

Petitioner also complains that his due process rights were violated because his extradition from Germany was premised on charges set forth in a complaint filed in the Bay County Circuit Court. But, he was tried based on a complaint that was not identical to the complaint that prompted his extradition.[5]

When Petitioner challenged venue regarding some of the charges, those charges were dismissed and then the prosecution of those charges was commenced in Saginaw County, where venue was proper. That alteration, Petitioner contends, violated the terms of the treaty pursuant to which he was extradited. The Michigan Court of Appeals resolved Petitioner's claim as follows:

> Defendant argues on appeal that the refiling of charges in a different venue violates Article 22 ("Rule of Speciality") of the Treaty on Extradition Between the United States of America and the Federal Republic of Germany (signed June 20, 1978). We review this question of law de novo. *People v Henry*, 315 Mich App 130, 143; 889 NW2d 1 (2016).
>
> Article 22 provides in pertinent part as follows:
>
> (1) A who person has been extradited under this Treaty shall not be proceeded against, sentenced or detained with a view to carrying out a sentence or detention order for any offense committed prior to his surrender other than that for which he was extradited, nor shall he be for any other reason restricted in his personal freedom, except in the following cases:
>
>> (a) When the State which extradited him consents thereto. . . .
>>
>> (b) When such person, having had the opportunity to leave the territory of the State to which he has been surrendered, has not done so within 45 days of his

---

[5] Petitioner raised the same challenge in his Bay County case.

14

> final discharge or has returned to that territory after leaving it. . . .
>
> * * *
>
> (3) If the offense for which the person sought was extradited is legally altered in the course of proceedings, he shall be prosecuted or sentenced provided the offense under its legal description is:
>
>> (a) Based on the same set of facts contained in the extradition request and its supporting documents; and
>>
>> (b) Punishable by the same maximum penalty as, or a lesser maximum penalty than, the offense for which he was extradited.

"The Rule of Specialty, a treaty-law doctrine, holds that a nation seeking return of a person under the terms of an extradition treaty may prosecute the extradited person only to the extent expressly authorized by the surrendering nation in the grant of extradition." *United States v Stokes*, 726 F3d 880, 887-888 (CA 7, 2013). Accordingly, the rule "'requires that the requesting country not prosecute for crimes. . . for which an extradition was not granted.'" *United States v Garrido-Santana*, 360 F3d 565, 577 (CA 6, 2004), quoting *Demjanjuk v Petrovsky*, 776 F2d 571, 583 (CA 6, 1985).

"The doctrine of specialty is designed to prevent prosecution for an offense for which the person would not have been extradited or to prevent punishment in excess of what the requested state had reason to believe was contemplated." Restatement (Third) of Foreign Relations Law of the United States, § 477, comment b, p 579. "What the doctrine of specialty requires is that the prosecution be 'based on the same facts as those set forth in the request for extradition.'" United States v Sensi, 879 F2d 888, 895(DDC, 1989), quoting Restatement, § 477, comment a, p 579.

> [T]he inquiry into specialty boils down to whether, under the totality of the circumstances, the court in the requesting state reasonably believes that prosecuting the defendant on particular charges contradicts the surrendering state's manifested intentions, or, phrased another way, whether the surrendering state would deem the conduct for which the requesting state actually prosecutes the defendant as interconnected with (as opposed to independent from) the acts for which he was extradited. [*United States v Saccoccia*, 58 F3d 754, 767 (CA 1, 1995).]

Defendant does not assert that additional charges were brought against him or that the offenses for which he was extradited substantively changed. Rather, he argues that the change of venue and amendment as to the complaining witnesses amounted to "a substantial change that results in the broadening of the charges." Defendant presents no authority supporting his claim that a change of venue violates the rule.

15

> See *Mitcham*, 355 Mich at 203 ("It is not enough for an appellant in his brief simply to announce a position" and leave it up to the appellate court to "search for authority either to sustain or reject his position."). Regardless, an intra-state change in venue for three of the offenses for which defendant was extradited does not offend the rule's goal of preventing an extradited defendant from being charged or punished in a way unanticipated by the state granting extradition. See Restatement, § 477, comment b, p 579.
>
> As for the complaining witnesses, defendant asserts that he "was extradited from Germany under a complaint that alleged that the victims or complaining witnesses against her(sic)were Robert Wachowski, Vicki Brandel [a/k/a Tedrow], and David Charlesbois in Bay County, Michigan." He argues that when plaintiff realized it "could not prove [he] committed . . . a crime against Mr. Wachoski," plaintiff "amended the complaint changing Mr. Wachoski to Ms. Buehl, who never testified in this case . . . ." Although the original complaint filed in Saginaw County District Court alleged crimes against Wachowski, Buehl, Tedrow, and Charlesbois, that charge was voluntarily dismissed. Further, the information was ultimately amended to contain only allegations pertaining to Tedrow. Thus, defendant does not establish the factual predicate to his argument—he was not prosecuted for conduct relating to Buehl.
>
> In sum, the prosecution of three of the extradited offenses in a different venue did not violate Article 22. No additional offenses were brought against defendant and he was not prosecuted for crimes against an unforeseen complainant.

(Mich. Ct. App. Op., ECF 6-11, PageID.260-262) (footnotes omitted).

The question to be resolved on habeas review is whether the court of appeals' determination of this issue is contrary to, or an unreasonable application of, clearly established federal law. As explained above, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller*, 742 F.3d at 644 (citing *Greene*, 565 U.S. at 38). This Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller*, 299 F.3d at 578-79. That limitation greatly simplifies the analysis.

The crux of Petitioner's argument is that the "offense" for which he was extradited was not the offense for which he was tried. He sees the differences between the venue and victims described in the initial Bay County complaint presented at extradition and the Saginaw County

16

complaint—the same differences identified by the court of appeals in its opinion—as sufficiently significant to preclude the trial court's exercise of jurisdiction over him. Respondent disagrees. Respondent notes that the statutes Petitioner was accused of violating remained the same in both complaints, as did the punishments; and, that Petitioner was tried for selling the very same limited partnership interests that were at issue when the matter was presented for extradition.

Petitioner cites only one Supreme Court case in support of his argument: *United States v. Rauscher*, 119 U.S. 407 (1886). In *Rauscher*, the Supreme Court considered whether Rauscher, who had been extradited from Great Britain for murder, could be tried instead for cruel and unusual punishment. The Court concluded he could not, even if the evidence were exactly the same in the prosecution for cruel and unusual punishment in the United States as it had been in the extradition proceedings for murder in Great Britain. *Rauscher*, 119 U.S. at 431-432. But, there is a critical distinction between Rauscher's situation and Petitioner's: the changed offense of cruel and unusual punishment in Rauscher's case was not an extraditable offense:

> [B]ut, as the treaty only justified his delivery on the ground that he was proved to be guilty of murder before the committing magistrate, it does not follow at all that such magistrate would have delivered him on a charge, founded upon precisely the same evidence, of inflicting cruel and unusual punishment; an offense for which the treaty made no provision, and which was of a very unimportant character when compared with that of murder.

*Id*. at 432. The Supreme Court found that difference between a prosecution for murder and a prosecution for cruel and unusual punishment to be critical:

> The treaty of 1842 being, therefore, the supreme law of the land, of which the courts are bound to take judicial notice, and to enforce in any appropriate proceeding the rights of persons growing out of that treaty, we proceed to inquire, in the first place, so far as pertinent to the questions certified by the circuit judges, into the true construction of the treaty. We have already seen that, according to the doctrine of publicists and writers on international law, the country receiving the offender against its laws from another country had no right to proceed against him for any other offense than that for which he had been delivered up. This is a principle which commends itself, as an appropriate adjunct, to the discretionary exercise of the power of rendition, because it can hardly be supposed that a government which

17

>was under no treaty obligation, nor any absolute obligation of public duty, to seize a person who had found an asylum within its bosom, and turn him over to another country for trial, would be willing to do this, unless a case was made of some specific offense, of a character which justified the government in depriving the party of his asylum.  It is unreasonable that the country of the asylum should be expected to deliver up such person to be dealt with by the demanding government without any limitation, implied or otherwise, upon its prosecution of the party.  In exercising its discretion, it might be very willing to deliver up offenders against such laws as were essential to the protection of life, liberty, and person, while it would not be willing to do this on account of minor misdemeanors, or of a certain class of political offenses in which it would have no interest or sympathy.  Accordingly, it has been the policy of all governments to grant an asylum to persons who have fled from their homes on account of political disturbances, and who might be there amenable to laws framed with regard to such subjects, and to the personal allegiance of the party.  In many of the treaties of extradition between the civilized nations of the world there is an express exclusion of the right to demand the extradition of offenders against such laws, and in none of them is this class of offenses mentioned as being the foundation of extradition proceedings.  **Indeed, the enumeration of offenses in most of these treaties, and especially in the treaty now under consideration, is so specific, and marked by such a clear line in regard to the magnitude and importance of those offenses, that it is impossible to give any other interpretation to it than that of the exclusion of the right of extradition for any others.**

*Id*. at 419-420.

Petitioner does not contend that the offenses described in the Saginaw County complaint are not subject to extradition under the treaty.  Therefore, the law clearly established in *Rauscher* is not contravened by the Michigan Court of Appeals' determination that the Saginaw County Circuit Court properly exercised jurisdiction over Petitioner in the prosecution of the amended complaint.[6]  Accordingly, Petitioner is not entitled to habeas relief on his "rule of specialty" claim.

---

[6] The fact that the state appellate court's determination is not contrary to, or an unreasonable application of, clearly established federal law does not mean that Petitioner does not have a valid argument for extension of the *Rauscher* holding to other circumstances—circumstances that might include the change in venue or complaining witnesses.  Indeed, Petitioner presents such an argument supported by additional lower federal court authority.  That argument is simply not appropriate on habeas review:

>Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  *See Scheidegger, Habeas Corpus, Relitigation, and the Legislative Power*, 98 Colum. L. Rev. 888, 949 (1998).  Thus, "if a habeas court must extend a

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

---

rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." *Yarborough*, 541 U.S., at 666. AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law." *Ibid*.

*White*, 572 U.S. at 426.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  July 6, 2020                    /s/ *Maarten Vermaat*
                                        Maarten Vermaat
                                        United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).